**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
CEDAR RAPIDS DIVISION**

| | |
|---|---|
| ROBERT DANA WOODARD,<br><br>    Plaintiff,<br><br>vs.<br><br>EDWARD O'BRIEN, JERRY CONNELLY, DURGA SATYAVOLU, SALLY PORTER, and LINDA BOFFELI,<br><br>    Defendants. | No. C07-0121-MWB<br><br>**ORDER REGARDING MAGISTRATE'S REPORT AND RECOMMENDATION CONCERNING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** |

_____

**TABLE OF CONTENTS**

*I.  INTRODUCTION AND BACKGROUND* . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
    *A.  Procedural Background* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
    *B.  Factual Background* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*II.  ANALYSIS* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6
    *A.  Standard Of Review Of A Report And Recommendation* . . . . . . . . . . 6
    *B.  Summary Judgment Standards* . . . . . . . . . . . . . . . . . . . . . . . . . . 10
    *C.  Woodard's Objections* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*III.  CONCLUSION* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

# I. INTRODUCTION AND BACKGROUND

## A. *Procedural Background*

Pursuant to 42 U.S.C. § 1983, plaintiff Robert Dana Woodard alleges defendants Edward O'Brien, Jerry Connelly, Durga Satyavolu, Sally Potter, and Linda Boffeli violated his Eighth Amendment rights by deliberate indifference to his serious medical needs by refusing to provide proper, timely treatment for a severe eye infection. Defendants moved for summary judgment, arguing: (1) Woodard fails to state an Eighth Amendment claim because there is no evidence of defendants' deliberate indifference to a serious medical need; (2) he failed to exhaust his administrative remedies; and (3) alternatively, defendants are entitled to qualified immunity. In response, Woodard's attorney filed a Motion to Withdraw as Counsel, pursuant to *Anders v. California*, 386 U.S. 738 (1967), accompanied by a brief and the opinions of experts hired by Woodard to review the case.

Defendants' Motion for Summary Judgment was referred to Chief United States Magistrate Judge Paul A. Zoss pursuant to 28 U.S.C. § 636(b)(1)(B). On January 10, 2011, Judge Zoss filed his Report and Recommendation. Judge Zoss recommends that summary judgment be granted, and that Woodard's counsel's motion to withdraw be granted. Judge Zoss concludes summary judgment should be granted on the merits because Woodard is unable to show defendants ignored an acute or escalating situation, or that the defendants' delays in providing him with treatment adversely affected the prognosis or ultimate outcome of his eye condition. Judge Zoss also concludes that defendant are not entitled to qualified immunity, or to summary judgment, on the ground that Woodard failed to exhaust his administrative remedies. Judge Zoss found defendants are not entitled to qualified immunity because Woodard's claims are based on deliberate indifference to a serious medical need and his constitutional right to necessary medical

treatment was clearly established at the time of the conduct here and would have been known to any reasonable correctional officer. Judge Zoss found summary judgment should be denied on defendants' failure to exhaust argument because the penitentiary's grievance procedure is ambiguous regarding an inmate's need to appeal prior to filing a lawsuit and Woodard complied with the grievance procedure to the best of his ability. Alternatively, Judge Zoss concluded a genuine issue of material fact had been generated regarding whether Woodard properly exhausted his administrative remedies, precluding summary judgment. On January 24, 2011, defendants filed their objections to Judge Zoss's Report and Recommendation (docket no. 88). On February 7, 2011, Woodard mailed his *pro se* objections to the Report and Recommendation, asserting that he had only received the Report and Recommendation that day and requesting that his objections be considered timely. Woodard's *pro se* objections were received and filed on February 14, 2011. Because Woodard claims he did not receive Judge Zoss's Report and Recommendation until February 7th, I will consider Woodard's objections as timely filed. Thus, I review Judge Zoss's Report and Recommendation.

### *B. Factual Background*

In his Report and Recommendation, Judge Zoss made the following findings of fact:

> Woodard was an inmate at ASP from August 30, 2006, to October 7, 2008. During that time, the defendant Edward O'Brien was a physician at the Iowa Medical Classification Center, acting in a supervisory capacity over physicians within the Iowa DOC. The defendant Jerry Connelly was Nursing Services Director at ASP. The defendant Durga Satyavolu was a doctor at ASP. Sally Potter and Linda Boffeli were nurses at ASP.

3

Woodard began experiencing problems with his left eye at least as early as June 2006. Dr. Silbermann summarized Woodard's pre-incarceration history as follows:

> Mr. Woodard initially presented to the University [of Iowa Hospitals and Clinics] on June 6, 2006 (prior to his incarceration) with a history of having been beaten with a tire iron and having left eye pain. The ocular findings in the left eye were consistent with an inflammatory process in this eye and were felt to be unrelated to the trauma. Later notes (7-11-06) indicate that there had been a long standing history of decreased vision in his left eye predating the present episode. There was a significant past medical history including tuberculosis, hepatitis C, and osteomyelitis. This is pointed out because there are a number of systemic conditions that may have intraocular inflammation as part of their presentation and clinical course. Mr. Woodard was started on conventional therapy to manage the inflammation, but, this was not particularly helpful. Extensive medical work up was begun in an effort to establish an etiology, so as to be able to provide more directed therapy. . . . Mr. Woodard was evaluated by Infectious Disease at the University several times. The impression was that there had been multiple epidemiologic exposures during which Mr. Woodard could have acquired an infectious agent and his present situation might be related to one of these with an organism being the cause of the uveitis.

Doc. No. 84-2, p. 3.

Thus, when Woodard entered ASP, he already was experiencing significant problems with his left eye. According to Woodard, his problems started with floaters in his eye, redness, pain, and blurriness, which progressed into severe pain, persistent infections, and blindness in his left eye. Doc. No. 7, p. 3. Woodard was referred to a specialist in the Ophthalmology Clinic at the University of Iowa Hospitals and Clinics ("UIHC"). From his review of Woodard's medical records, Dr. Ekwena provided the following summary of the course of Woodard's treatment at UIHC:

> [Woodard] was referred to UIHC ophthalmology where he underwent screen tests and cultures and several eye procedures and was ultimately diagnosed with chronic uveitis which was at a point linked to some fungal infection. His vision progressively deteriorated. He underwent various treatments including but not limited to kenalog injections, anti-fungal medications, vitrectomy and Retisert implant OS in 12/06, and pars plana vitrectomy, membranescleral buckle, endolaser, injection of amphotericin and voriconazole, gas fluid exchange retinal reattachment in 01/07. Finally on 07/02/07 he had enucleation of the left eye and subsequently received an artificial eye implant.

Doc. No. 84-2, p. 6.

. . . .

Dr. Ekwena observes, in his report, that Woodard's interactions with ASP staff did not go well, and he opines "the staff could have exhibited more empathy given the potential frustration inherent in a condition such as [Woodard's]." Doc. No. 84-2, p. 8. He further noted that ASP staff "should have been more proactive and caring to Mr. Woodard's concerns and exhibited more understanding of his frustration and needs." *Id.*, p. 7. He observed that "[t]here were times when

5

> it appeared there were delays in follow up and in responding to [Woodard's] concerns but they do not appear to constitute medical negligence." *Id.* The doctor indicated it was "difficult to determine if the ultimate outcome of [Woodard's] left eye would have been otherwise given the chronicity of his condition, complexity and the co-morbid pathologies," noting Woodard "had compounding medical variables which made it . . . difficult to identify the etiology of his pathology and that complicated the treatment process." *Id.* In Dr. Ekwena's opinion, the defendants' actions did not rise to the level of medical negligence, and he found "nothing specific in [Woodard's] records . . . that would clearly confirm his allegations of medical indifference." *Id.*, pp. 7, 8.
>
> Dr. Silbermann reached similar conclusions, as follows:
>
>> In my medical opinion after review of all the record, is that Mr. Woodard, had a severe long standing infectious inflammatory process (predating his incarceration) that resulted in loss of an eye, despite the best efforts, by all concerned. The brief interruption in receiving drops would not have altered the process and would not have affected the patient's course. The outcome would not have been different.
>
> Doc. No. 84-2, p. 5.

Report and Recommendation at 12-16. Upon review of the record, I adopt all of Judge Zoss's factual findings.

## II. ANALYSIS

### A. *Standard Of Review Of A Report And Recommendation*

The district court's standard of review for a magistrate judge's report and recommendation is established by statute:

> A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions.

28 U.S.C. § 636(b)(1) (2006); *see* Fed. R. Civ. P. 72(b) (stating identical requirements); N.D. IA. L.R. 72, 72.1 (allowing the referral of dispositive matters to a magistrate judge but not articulating any standards to review the magistrate judge's report and recommendation). The United States Supreme Court has explained this statutory standard, as follows:

> Any party that desires plenary consideration by the Article III judge of any issue need only ask. Moreover, while the statute does not require the judge to review an issue *de novo* if no objections are filed, it does not preclude further review by the district judge, *sua sponte* or at the request of a party, under a *de novo* or any other standard.

*Thomas v. Arn*, 474 U.S. 140, 154 (1985).

Thus,

- A district court *may* review *de novo* any issue in a magistrate judge's report and recommendation at any time. *Id.* This discretion to conduct *de novo* review of any issue at any time makes sense, because the Eighth Circuit Court of Appeals has "emphasized the necessity . . . of retention by the district court of substantial control over the ultimate disposition of matters referred to a magistrate." *Belk v. Purkett*, 15 F.3d 803, 815 (8th Cir. 1994).

- If a party files an objection to the magistrate judge's report and recommendation, however, the district court

7

*must* "make a de novo determination of *those portions* of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1) (emphasis added). In most cases, to trigger *de novo* review, "objections must be timely and specific," *Thompson v. Nix.*, 897 F.2d 356, 358-59 (8th Cir. 1990): however, the Eighth Circuit Court of Appeals has been willing to "liberally construe[]" otherwise general *pro se* objections to require a *de novo* review of all "alleged errors," *see Hudson v. Gammon*, 46 F.3d 785, 786 (8th Cir. 1995), and has also been willing to conclude that general objections require "full *de novo* review" if the record is concise, *Belk*, 15 F.3d at 815 ("Therefore, even had petitioner's objections lacked specificity, a *de novo* review would still have been appropriate given such a concise record."). When objections have been made, and the magistrate judge's report is based upon an evidentiary hearing, "'the district court must, at a minimum, listen to a tape recording or read a transcript of the evidentiary hearing.'" *United States v. Azure*, 539 F.3d 904, 910 (8th Cir. 2008) (quoting *Jones v. Pillow*, 47 F.3d 251, 252 (8th Cir. 1995), in turn quoting *Branch v. Martin*, 886 F.2d 1043, 1046 (8th Cir. 1989)).

- In the absence of an objection, the district court is not required "to give any more consideration to the magistrate's report than the court considers appropriate." *Thomas*, 474 U.S. at 150; *see also Peretz v. United States*, 501 U.S. 923, 939 (1991) (section 636(b)(1) "provide[s] for de novo review *only* when a party objected to the magistrate's findings or recommendations" (emphasis added)); *United States v. Ewing*, 632 F.3d 412, 415 (8th Cir. 2011) ("By failing to file objections, Ewing waived his right to *de novo* review [of a magistrate judge's report and recommendation on a suppression motion] by the

8

district court."). Indeed, *Thomas* suggests that no review at all is required. *Id.* ("We are therefore not persuaded that [section 636(b)(1)] requires some lesser review by the district court when no objections are filed.").

Nevertheless, the Eighth Circuit Court of Appeals has indicated that a district court should review the portions of a magistrate judge's report and recommendation to which no objections have been made under a "clearly erroneous" standard of review. *See Grinder v. Gammon*, 73 F.3d 793, 795 (8th Cir. 1996) (noting when no objections are filed and the time for filing objections has expired, "[the district court judge] would only have to review the findings of the magistrate judge for clear error"); *Taylor v. Farrier*, 910 F.2d 518, 520 (8th Cir. 1990) (noting the advisory committee's note to FED. R. CIV. P. 72(b) indicates "when no timely objection is filed the court need only satisfy itself that there is no clear error on the face of the record"). Review for clear error, even when no objection has been made, is consistent with "retention by the district court of substantial control over the ultimate disposition of matters referred to a magistrate." *Belk*, 15 F.3d at 815.

Although the Eighth Circuit Court of Appeals has not explained precisely what "clear error" review means in this context, in other contexts, the Supreme Court has stated that the "foremost" principle under this standard of review "is that '[a] finding is "clearly erroneous" when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.'" *Anderson v. City of Bessemer City*, 470 U.S. 564, 573-74 (1985) (quoting *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948)).

Because there are objections in this case, I must conduct a *de novo* review. Keeping these standards in mind, I will first briefly review the summary judgment standards, followed by an analysis of the parties' objections to Judge Zoss's Report and Recommendation.

### *B. Summary Judgment Standards*

Motions for summary judgment essentially "define disputed facts and issues and . . . dispose of unmeritorious claims [or defenses]." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 585 (2007) (internal quotation marks and citation omitted); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986) ("One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses. . . ."). Summary judgment is only appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no *genuine* issue of *material* fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c) (emphasis added); *see Woods v. DaimlerChrysler Corp.*, 409 F.3d 984, 990 (8th Cir. 2005) ("Summary judgment is appropriate if viewing the record in the light most favorable to the nonmoving party, there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law."). A fact is *material* when it "'might affect the outcome of the suit under the governing law.'" *Johnson v. Crooks*, 326 F.3d 995, 1005 (8th Cir. 2003) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). Thus, "the substantive law will identify which facts are material." *Anderson*, 477 U.S. at 248. An issue of material fact is *genuine* if it has a real basis in the record, *Hartnagel v. Norman*, 953 F.2d 394, 395 (8th Cir. 1992) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)), or when "'a reasonable jury could return a verdict for the nonmoving party' on the

question," *Woods*, 409 F.3d at 990 (quoting *Anderson*, 477 U.S. at 248); *see Diesel Machinery, Inc. v. B.R. Lee Indus., Inc.*, 418 F.3d 820, 832 (8th Cir. 2005) (stating genuineness depends on "whether a reasonable jury could return a verdict for the non-moving party based on the evidence").

Procedurally, the moving party bears "the initial responsibility of informing the district court of the basis for its motion and identifying those portions of the record which show a lack of a genuine issue," *Hartnagel,* 953 F.2d at 395 (citing *Celotex*, 477 U.S. at 323), and demonstrating that it is entitled to judgment according to law. *See Celotex*, 477 U.S. at 323 ("[T]he motion may, and should, be granted so long as whatever is before the district court demonstrates that the standard for the entry of summary judgment, as set forth in Rule 56(c), is satisfied."). Once the moving party has successfully carried its burden under Rule 56(c), the nonmoving party has an affirmative burden to go beyond the pleadings and by depositions, affidavits, or otherwise, designate "specific facts showing that there is a genuine issue for trial." FED. R. CIV. P. 56(e); *Mosley*, 415 F.3d at 910 ("The nonmoving party may not 'rest on mere allegations or denials, but must demonstrate on the record the existence of specific facts which create a genuine issue for trial.'" (quoting *Krenik v. County of Le Sueur*, 47 F.3d 953, 957 (8th Cir. 1995))). In considering whether a genuine issue of material fact is present the court must view all the evidence in the light most favorable to the nonmoving party and give that party the benefit of all reasonable inferences. *Matsushita*, 475 U.S. at 587-88; *Mosley*, 415 F.3d at 910. However, the court does not weigh the evidence, assess credibility, or determine the truth of the matters presented. *Kammueller v. Loomis, Fargo & Co.*, 383 F.3d 779, 784 (8th Cir. 2004); *Quick v. Donaldson Co., Inc.*, 90 F.3d 1372, 1376-77 (8th Cir. 1996).

### C. Woodard's Objections

In his *pro se* objections, Woodard reasserts his contention that defendants acted with deliberate indifference to his serious medical needs by failing to properly disburse his medications. Woodard objects to Judge Zoss's conclusion that his claims do not establish an Eighth Amendment violation.

The Eighth Amendment places a duty on prison officials to provide humane conditions of confinement. *Weaver v. Clarke*, 45 F.3d 1253, 1255 (8th Cir. 1995) (citing *Farmer v. Brennan*, 511 U.S. 825 (1994)). One such humane condition of confinement is adequate medical attention. *Weaver v. Clarke*, 45 F.3d at 1255 "[A] prison official violates the Eighth Amendment by being deliberately indifferent either to a prisoner's existing serious medical needs or to conditions posing a substantial risk of serious future harm." *Id*. (comparing *Estelle v. Gamble*, 429 U.S. 97, 104 (1976) (existing medical needs), with *Helling v. McKinney*, 509 U.S. 25, 33-34 (1993) (risk of future harm to health)); *see Bender v. Regier*, 385 F.3d 1133, 1137 (8th Cir. 2004) (noting that "[p]rison doctors and guards violate the Eighth Amendment when they act with 'deliberate indifference to [an inmate's] serious medical needs.'") (quoting *Estelle*, 429 U.S. at 104). In a deprivation of medical care case, the inmate must show (1) an objectively serious medical need; and (2) the defendants actually knew of the medical need but were deliberately indifferent to it. *See Langford v. Norris*, 614 F.3d 445, 460 (8th Cir. 2010); *Jones v. Minnesota Dep't of Corrections*, 512 F.3d 478, 481-82 (8th Cir. 2008)*; Albertson v. Norris*, 458 F.3d 762, 765 (8th Cir. 2006); *Grayson v. Ross*, 454 F.3d 802, 808-09 (8th Cir. 2006).

As the Eighth Circuit Court of Appeals has explained:

> An objectively serious medical need is one that either has been diagnosed by a physician as requiring treatment, or is so

> obvious that even a "layperson would easily recognize the necessity for a doctor's attention." *See Coleman v. Rahija,* 114 F.3d 778, 784 (8th Cir. 1997), *quoting Camberos v. Branstad,* 73 F.3d 174, 176 (8th Cir. 1995). "'To establish a constitutional violation, it is not enough that a reasonable official should have known of the risk.' Rather, a plaintiff must demonstrate the official actually knew of the risk and deliberately disregarded it." *Vaughn v. Greene County, Ark.,* 438 F.3d 845, 850 (8th Cir. 2006), *quoting Farmer v. Brennan,* 511 U.S. 825, 837, 114 S. Ct. 1970, 128 L. Ed. 2d 811 (1994). The determination that prison officials had actual knowledge of a serious medical need may be inferred from circumstantial evidence or from the very fact that the risk was obvious. *See Farmer,* 511 U.S. at 842, 114 S. Ct. 1970. If prison officials have actual knowledge of a serious medical need, and fail to take reasonable measures to address it, they may [be] held liable for deliberate indifference. *See id.* at 847, 114 S. Ct. 1970. "However, '[a] showing of deliberate indifference is greater than gross negligence and requires more than mere disagreement with treatment decisions." *Pietrafeso v. Lawrence County, S.D.,* 452 F.3d 978, 983 (8th Cir. 2006), *quoting Gibson v. Weber,* 433 F.3d 642, 646 (8th Cir. 2006).

*Jones*, 512 F.3d at 481-82; *see Hott v. Hennepin County, Minnesota*, 260 F.3d 901, 905 (8th Cir. 2001) (citing elements of an Eighth Amendment claim); *Moore v. Duffy*, 255 F.3d 543, 545 (8th Cir. 2001) (discussing elements and noting that deliberate indifference required "something more than negligence but less than actual intent to harm; it requires proof of a reckless disregard of the known risk") (quotation and citation omitted); *Jolly v. Knudsen*, 205 F.3d 1094, 1096 (8th Cir. 2000) (setting out elements of Eighth Amendment deliberate indifference claim and noting "'[t]he prisoner must show more than negligence, more than even gross negligence, and mere disagreement with treatment decisions does not rise to the level of a constitutional violation.'") (quoting *Estate of Rosenberg v. Crandell*, 56 F.3d 35, 37 (8th Cir. 1995)). Additionally, "[w]here the complaint involves treatment

13

of a prisoner's sophisticated medical condition, expert testimony is required to show proof of causation." *Alberson v. Norris,* 458 F.3d 762, 765-66 (8th Cir. 2006) (prisoner died after treating doctors failed to diagnose his Goodpasture Syndrome, "a rare autoimmune disease that is difficult to diagnose."); *see Gibson v. Weber,* 433 F.3d 642, 644-46 (8th Cir. 2006) (inmate with peripheral diabetic neuropathy, "a disease which causes numbness in the feet and which makes any injury to his feet a serious health risk", challenged treatment for burns to his feet); *Robinson v. Hager,* 292 F.3d 560, 564 (8th Cir. 2002) (inmate argued "lapse in hypertension medication" caused him to have a stroke).

I agree with Judge Zoss that Woodard's claims fail for a lack of proof of causation. Woodard's severe eye infection was a sophisticated medical condition. His eye infection was complicated, requiring that he be seen and treated multiple times by specialists at the Ophthalmology Clinic at the University of Iowa Hospitals and Clinics. Thus, expert testimony is necessary to establish causation. *See Alberson,* 458 F.3d 762, 765-66; *Gibson,* 433 F.3d at 644-46; *Robinson,* 292 F.3d at 564. Woodard has not offered any expert opinion evidence supporting his claims that defendants' treatment was constitutionally inadequate. Defendants, however, provided the affidavit of defendant Jerry Connelly, a registered nurse and the Director of Nursing Services at the Anamosa State Penitentiary, attesting that the treatment provided to Woodard was "appropriate and timely." Defendant's Ex. C., Connelly Aff. at ¶ 3. Defendants have buttressed Connelly's affidavit with reports from Woodard's own experts, ophthalmologist Neil Silbermann, M.D. and family practice physician Jason Ekwena, M.D., both of whom conclude that defendants provided Woodard with adequate medical care for his eye infection. Woodard's bare allegations to the contrary are insufficient to substantiate an Eighth Amendment violation. "In the face of medical records indicating that treatment was provided and physician affidavits indicating that the care provided was adequate, an inmate

cannot create a question of fact by merely stating that [he] did not feel [he] received adequate treatment." *Dulany v. Carnahan,* 132 F.3d 1234, 1240 (8th Cir. 1997); *see Meuir v. Greene County Jail Employees*, 487 F.3d 1115, 1118-19 (8th Cir. 2007) ("'[A] prisoner's mere difference of opinion over matters of expert medical judgment or a course of medical treatment fail[s] to rise to the level of a constitutional violation.'") (quoting *Taylor v. Bowers,* 966 F.2d 417, 421 (8th Cir. 1992)); *Long v. Nix,* 86 F.3d 761, 765 (8th Cir. 1996) ("Prisoners do not have a constitutional right to any particular type of treatment. Prison officials do not violate the Eighth Amendment when, in the exercise of their professional judgment, they refuse to implement a prisoner's requested course of treatment."). When viewing the facts in the light most favorable to Woodard, he has failed to produce evidence, given the complete lack of favorable expert opinion evidence, which would permit a reasonable jury to find that defendants were deliberately indifferent to his serious medical needs. The circumstances of this lawsuit are obviously unfortunate, but do not constitute an Eighth Amendment violation. Therefore, Woodard's *pro se* objections are overruled and defendants' Motion for Summary Judgment granted.[1]

### III. CONCLUSION

For the reasons discussed above, I **overrule** Woodard's *pro se* objections and **adopt** Judge Zoss's Report and Recommendation. The defendants' Motion for Summary Judgment (docket no. 82) and Woodard's counsel's Motion to Withdraw as Counsel (docket no. 84) are **granted**, and judgment shall enter accordingly.

---

[1] Having granted summary judgment on the merits, it is unnecessary to consider defendants' objections to Judge Zoss's Report and Recommendation that they are entitled to qualified immunity, or that Woodard's claims are barred for failure to exhaust administrative remedies.

**IT IS SO ORDERED.**

**DATED** this 20th day of April, 2011.

_____
MARK W. BENNETT
U. S. DISTRICT COURT JUDGE
NORTHERN DISTRICT OF IOWA